Paul R. Cort, State Bar No. 184336
Earthjustice
50 California Street
San Francisco, CA 94111
Tel: 415-217-2000
Fax: 415-217-2040
pcort@earthjustice.org

Seth L. Johnson, *Pro Hac Vice*
Isabel Segarra Trevino, *Pro Hac Vice*
Earthjustice
1625 Massachusetts Ave., NW, Ste. 702
Washington, DC 20036
sjohnson@earthjustice.org
isegarra@earthjustice.org
Tel: 202-667-4500/Fax: 202-667-2356

*Counsel for Plaintiffs Center for Biological
Diversity and Sierra Club*

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

CENTER FOR BIOLOGICAL DIVERSITY
and SIERRA CLUB,

　　　　　*Plaintiffs,*

　　　　　v.

ANDREW R. WHEELER, in his official
capacity as Administrator, United States
Environmental Protection Agency,

　　　　　*Defendant.*

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No.: 3:19-cv-2462-RS

**PLAINTIFFS' NOTICE OF MOTION
AND MOTION FOR SUMMARY
JUDGMENT**

Date:　　December 19, 2019
Time:　　1:30 p.m.
Place:　　Courtroom 3, 17th Floor
Judge:　　Richard Seeborg

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................................ ii

NOTICE OF MOTION FOR SUMMARY JUDGMENT ............................................................. 1

MOTION FOR SUMMARY JUDGMENT ................................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................ 3

INTRODUCTION ......................................................................................................................... 3

STATEMENT OF ISSUES ........................................................................................................... 3

STATEMENT OF FACTS AND LEGAL FRAMEWORK ......................................................... 3

    I.    OZONE SERIOUSLY HARMS HUMAN HEALTH AND THE ENVIRONMENT. ....... 3

    II.    THE CLEAN AIR ACT PRESCRIBES A CAREFULLY-DESIGNED PROGRAM FOR CONTROLLING OZONE POLLUTION. .................................................................................. 4

    III.    EPA PROMULGATES THE 2008 OZONE STANDARD AND BEGINS IMPLEMENTING IT. .................................................................................................................. 6

    IV.    EPA FAILS TO TAKE LEGALLY REQUIRED ACTIONS REGARDING WHETHER THE AREAS AT ISSUE MET THE MODERATE AREA ATTAINMENT DEADLINE. ...................................................................................................................................... 7

JURISDICTION, NOTICE, VENUE, AND STANDING ............................................................ 8

ARGUMENT ............................................................................................................................... 11

    I.    LEGAL STANDARD. ...................................................................................................... 11

    II.    EPA HAS FAILED TO PERFORM ITS MANDATORY CLEAN AIR ACT DUTY TO MAKE AND PUBLISH IN THE FEDERAL REGISTER ATTAINMENT DETERMINATIONS FOR IMPERIAL COUNTY AND PHOENIX-MESA. ....................... 11

    III.    THE COURT SHOULD REQUIRE EPA TO COMPLETE ITS OVERDUE ACTIONS BY A PROMPT DEADLINE. ................................................................................. 14

        A.    A Court Order Compelling EPA to Act Expeditiously Is Necessary to Effectuate the Clean Air Act. ................................................................................................................ 14

        B.    Certain Fixed Deadlines Are Appropriate. ................................................................. 15

            1. Imperial County ..................................................................................................... 16

            2. Phoenix-Mesa ......................................................................................................... 17

CONCLUSION ............................................................................................................................ 17

# TABLE OF AUTHORITIES

**CASES**                                                                 **PAGE(S)**

*Alabama Power Co. v. Costle,*
   636 F.2d 323 (D.C. Cir. 1979) .................................................................4

*Alabama v. Bozeman,*
   533 U.S. 146 (2001) .......................................................................12

*Am. Trucking Ass'ns v. EPA,*
   283 F.3d 355 (D.C. Cir. 2002) .........................................................3, 4

*American Lung Ass'n v. Browner,*
   884 F. Supp. 345 (D. Ariz. 1994) .....................................................15

*Celotex Corp. v. Catrett,*
   477 U.S. 317 (1986) .......................................................................11

*Communities for a Better Env't v. EPA,*
   No. C 07-03678 JSW, 2008 WL 1994898 (N.D. Cal. May 5, 2008) ....................15

*Ctr. for Biological Diversity v. Mattis,*
   868 F.3d 803 (9th Cir. 2008) ..........................................................10

*Delaney v. EPA,*
   898 F.2d 687 (9th Cir. 1990) ..........................................................15

*Friends of the Earth v. Laidlaw Envtl. Servs. (TOC),*
   528 U.S. 167 (2000) .......................................................................10

*Hall v. Norton,*
   266 F.3d 969 (9th Cir. 2001) ..........................................................10

*Horne v. Flores,*
   557 U.S. 433 (2009) .......................................................................14

*Hunt v. Wash. State Apple Advert. Comm'n,*
   432 U.S. 333 (1977) .........................................................................9

*Natural Resources Defense Council ("NRDC") v. EPA,*
   777 F.3d 456 (D.C. Cir. 2014) ..........................................................7

*NRDC v. EPA,*
   542 F.3d 1235 (9th Cir. 2008) ........................................................12

*NRDC v. Reilly,*
   983 F.2d 259 (D.C. Cir. 1993) ........................................................12

*NRDC v. Train*,
    510 F.2d 692 (D.C. Cir. 1974) ...................................................................................11, 15

*Nw. Envtl. Def. Ctr. v. Brennen*,
    958 F.2d 930 (9th Cir. 1992) ...........................................................................................13

*In re Ozone Designation Litigation*,
    286 F. Supp. 3d 1082 (N.D. Cal. 2018) ..........................................................................15

*Sierra Club v. Browner*,
    130 F. Supp. 2d. 78 (D.D.C. 2001) ....................................................................................6

*Sierra Club v. EPA*,
    346 F.3d 955 (9th Cir. 2003) ...........................................................................................11

*Sierra Club v. Thomas*,
    658 F. Supp. 165 (N.D. Cal. 1987) ............................................................................11, 15

*Sierra Club v. Thomas*,
    828 F.2d 783 (D.C. Cir. 1987) .........................................................................................15

*Sierra Club v. Whitman*,
    285 F.3d 63 (D.C. Cir. 2002) .......................................................................................6, 13

*South Coast Air Quality Mgmt. Dist. v. EPA*,
    472 F.3d 882 (D.C. Cir. 2006), *amended in other parts* 489 F.3d 1245 (D.C.
    Cir. 2007) ...........................................................................................................................5

*Tenn. Valley Auth. v. Hill*,
    437 U.S. 153 (1978) .........................................................................................................14

*United States v. McIntosh*,
    833 F.3d 1163 (9th Cir. 2016) .........................................................................................14

*United States v. Oakland Cannabis Buyers' Co-op.*,
    532 U.S. 483 (2001) .........................................................................................................14

*Whitman v. Am. Trucking Ass'ns*,
    531 U.S. 457 (2001) .........................................................................................................15


**STATUTES**

5 U.S.C. § 553 ...............................................................................................................................5

5 U.S.C. § 553(d) ........................................................................................................................17

28 U.S.C. § 1391(e)(1)(A) ...........................................................................................................9

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

28 U.S.C. § 1391(e)(1)(B) .................................................................................................9

28 U.S.C. § 1391(e)(1)(C) .................................................................................................9

42 U.S.C. § 7407(d)(1)(A) .................................................................................................4

42 U.S.C. § 7407(d)(1)(B) .................................................................................................4

42 U.S.C. § 7407(d)(1)(B)(i) .............................................................................................7

42 U.S.C. § 7408(a) ...........................................................................................................4

42 U.S.C. § 7409(a) ...........................................................................................................4

42 U.S.C. § 7409(b) ...........................................................................................................4

42 U.S.C. § 7409(d)(1) ......................................................................................................4

42 U.S.C. § 7410(a) ...........................................................................................................4

42 U.S.C. § 7410(a)(2)(I) ...................................................................................................5

42 U.S.C. § 7410(c) ...........................................................................................................4

42 U.S.C. § 7502 ...............................................................................................................4

42 U.S.C. § 7511 ..........................................................................................................4, 14

42 U.S.C. § 7511(a)(1) .......................................................................................................5

42 U.S.C. § 7511(b)(2)(A) ..........................................................................................3, 5, 12

42 U.S.C. § 7511(b)(2)(B) ..........................................................................................3, 5, 12

42 U.S.C. § 7511a .......................................................................................................4, 14

42 U.S.C. § 7511b .......................................................................................................4, 14

42 U.S.C. § 7511c .......................................................................................................4, 14

42 U.S.C. § 7511d .......................................................................................................4, 14

42 U.S.C. § 7511e .......................................................................................................4, 14

42 U.S.C. § 7511f .......................................................................................................4, 14

42 U.S.C. § 7604(a) .............................................................................................8, 14, 15

42 U.S.C. § 7604(a)(2) ....................................................................................................1, 8

**LEGISLATIVE HISTORY**

H.R. Rep. No. 101-490 (1990), *reprinted in* 2 *A Legislative History of the Clean Air Act Amendments of 1990* (1993) ...................................................................14

**REGULATIONS**

40 C.F.R. § 50.15(b) ...................................................................................................6

40 C.F.R. § 81.303 .....................................................................................................7

40 C.F.R. § 81.305 ................................................................................................7, 12

**FEDERAL REGISTER NOTICES**

73 FR 16,436 (Mar. 27, 2008) ...................................................................................6

77 FR 30,088 (May 21, 2012) ....................................................................................7

77 FR 30,160 (May 21, 2012) ....................................................................................7

77 FR 34,221 (June 11, 2012) ....................................................................................7

80 FR 12,264 (Mar. 6, 2015) .....................................................................................7

80 FR 65,292 (Oct. 26, 2015) .............................................................................3, 4, 7

81 FR 26,697 (May 4, 2016) ......................................................................................7

81 FR 66,240 (Sept. 27, 2016) .................................................................................16

81 FR 70,382 (Oct. 12, 2016) ...................................................................................17

81 FR 90,207 (Dec. 14, 2016) ..................................................................................16

81 FR 93,620 (Dec. 21, 2016) ..................................................................................17

83 FR 56,781 (Nov. 14, 2018) ..........................................................................6, 7, 13

84 FR 27,566 (June 13, 2019) ...........................................................................8, 9, 17

84 FR 44,238 (Aug. 23, 2019) .....................................................................6, 8, 13, 17

**COURT RULES**

Fed. R. Civ. P. 56 ................................................................................................................ 1, 11

Civil L.R. 56-1 ....................................................................................................................... 1

1

**NOTICE OF MOTION FOR SUMMARY JUDGMENT**

2      PLEASE TAKE NOTICE that on December 19, 2019, at 1:30 p.m., before the Honorable

3 Richard Seeborg, United States District Judge, in Courtroom 3, 17th Floor, 450 Golden Gate

4 Ave., San Francisco, CA 94102, Plaintiffs Center for Biological Diversity and Sierra Club

5 (collectively, "Plaintiffs" or "Environmental Groups") will and hereby do move for summary

6 judgment in their favor pursuant to Federal Rule of Civil Procedure 56 and Civil L.R. 56-1. This

7 motion is based on the points and authorities below, the attached declarations and exhibits, the

8 record of this action, and argument that may be presented at any hearing on this motion.

9

**MOTION FOR SUMMARY JUDGMENT**

10      As part of the process of alleviating elevated levels of ozone—smog—pollution that

11 harms people's health and the environment, Defendant, the Administrator of the U.S.

12 Environmental Protection Agency ("the Administrator," "EPA," or "the agency"), had a

13 mandatory duty under the Clean Air Act ("the Act") to determine by January 20, 2019, whether

14 areas designated nonattainment and classified as moderate under the 2008 national ambient air

15 quality standard ("standard" or "NAAQS") for ozone came into attainment with that standard by

16 their attainment deadline of July 20, 2018. The Administrator also had a mandatory duty to

17 publish notice in the Federal Register by January 20, 2019, of the attainment determinations and

18 any reclassifications of areas that failed to timely attain. At issue in this case are 12 such

19 moderate areas, including the Imperial County, CA, and Phoenix-Mesa, AZ, nonattainment

20 areas. There is no dispute that the Administrator did not fulfill these duties and remains in

21 violation of them regarding Imperial County and Phoenix-Mesa. Accordingly, Plaintiffs are

22 entitled to and request summary judgment as a matter of law on the question of liability.

23 Plaintiffs respectfully request that this Court: (1) declare that EPA's failure to complete its

24 mandatory duties to make and publish in the Federal Register attainment determinations

25 regarding the Imperial County and Phoenix-Mesa areas constitutes an unlawful failure to

26 perform a nondiscretionary act or duty under the Clean Air Act, 42 U.S.C. § 7604(a)(2); and (2)

27 order EPA to (A) propose its attainment determination regarding Imperial County by January 21,

28 2020, (B) make and publish in the Federal Register a final attainment determination (identifying

any reclassification) for Imperial County by March 19, 2020, with an effective date not later than April 20, 2020, and (C) make and publish in the Federal Register a final attainment determination (identifying any reclassification) for Phoenix-Mesa by January 21, 2020, with an effective date not later than February 20, 2020.

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

This is a straightforward mandatory duty lawsuit. To drive forward the Clean Air Act's mechanisms for reducing ground-level ozone air pollution (also known as "smog"), EPA was legally required to determine and publish notice in the Federal Register of its determination by January 20, 2019, whether 12 moderate ozone nonattainment areas, including Imperial County and Phoenix-Mesa, timely attained the 2008 ozone standard. It concededly still has not done so for those two areas. Areas that EPA finds failed to attain on time must be "reclassified" under the 2008 ozone standard so that they implement stronger protections against harmful air pollution; EPA findings of timely attainment will be subject to judicial review. EPA's delay therefore endangers the health and wellbeing of the millions of people who are exposed to unhealthy air in the Imperial County and Phoenix-Mesa communities. Two Environmental Groups respectfully request that this Court establish an expeditious schedule for EPA to do its job.

## STATEMENT OF ISSUES

1.     Whether EPA failed to make and publish in the Federal Register attainment determinations and reclassifications by the January 20, 2019, deadline for EPA action required by 42 U.S.C. § 7511(b)(2)(A), (B)?

2.     Whether completing the overdue mandatory actions by the dates requested by Plaintiffs is impossible?

## STATEMENT OF FACTS AND LEGAL FRAMEWORK

## I.     OZONE SERIOUSLY HARMS HUMAN HEALTH AND THE ENVIRONMENT.

Ozone, the main component of smog, is a corrosive air pollutant that inflames the lungs and constricts breathing. *See Am. Trucking Ass'ns v. EPA*, 283 F.3d 355, 359 (D.C. Cir. 2002); EPA-HQ-OAR-2008-0699-0405 ("Integrated Science Assessment") 2-20 to -23 tbl.2-1, Ex.1. It causes asthma attacks, emergency room visits, hospitalizations, and other serious health harms, and likely causes premature death. *E.g.*, 80 FR 65,292, 65,308/3-09/1 (Oct. 26, 2015); EPA-HQ-OAR-2008-0699-0404 ("Policy Assessment") 3-18, 3-26 to -29, 3-32, Ex.2; Integrated Science Assessment 2-16 to -18, 2-20 to -24 tbl.2-1. Ozone can harm healthy adults, but others are more

vulnerable. *See* 80 FR 65,310/1-3. Because their respiratory tracts are not fully developed, children are especially vulnerable to ozone pollution, particularly when they have elevated respiratory rates, as when playing outdoors. *E.g.*, Policy Assessment 3-81 to -82. People with lung disease and the elderly also have heightened vulnerability. *See* 80 FR 65,310/3. People with asthma suffer more severe impacts from ozone exposure than healthy individuals do and are more vulnerable at lower levels of exposure. *Id.* 65,311/1 n.37, 65,322/3.

Ozone also damages vegetation and forested ecosystems, causing or contributing to widespread stunting of plant growth, tree deaths, visible leaf injury, reduced carbon storage, and reduced crop yields. Policy Assessment 5-2 to -3; Integrated Science Assessment 9-1. By harming vegetation, ozone can also damage entire ecosystems, leading to ecological and economic losses. 80 FR 65,370/1-2, 65,377/3.

## II.   THE CLEAN AIR ACT PRESCRIBES A CAREFULLY-DESIGNED PROGRAM FOR CONTROLLING OZONE POLLUTION.

At the "heart" of the Clean Air Act is the requirement that the entire country come expeditiously into compliance with health- and welfare-protective air quality standards. *Alabama Power Co. v. Costle*, 636 F.2d 323, 346 (D.C. Cir. 1979). EPA must set "primary" and "secondary" standards for certain pervasive pollutants, like ozone, to protect public health and welfare, respectively. 42 U.S.C. §§ 7408(a), 7409(a)-(b). It must review and, as appropriate, revise these standards at least every five years. *Id.* § 7409(d)(1).

After EPA sets a standard, the implementation process begins, which, as relevant to this case, starts with initial area air quality designations. *See Am. Trucking*, 283 F.3d at 358-59. EPA promulgates designations of all areas of the country as either violating the standard ("nonattainment"), meeting the standard ("attainment"), or unclassifiable. 42 U.S.C. § 7407(d)(1)(A)-(B). For nonattainment areas, Congress created a detailed program to ensure that air quality will attain ozone standards by specified deadlines ("attainment deadlines"). *Id.* §§ 7410(a), (c), 7502; *see also id.* §§ 7511-7511f (provisions specific to ozone nonattainment areas). Each state must adopt a "state implementation plan" that, for nonattainment areas, includes all the requirements Congress crafted for such areas and any specific measures the state

determines should be implemented to address local sources of air pollution contributing to elevated ozone levels. *Id.* § 7410(a)(2)(I).

Simultaneously with their designation, ozone nonattainment areas must be classified as "marginal," "moderate," "serious," "severe," or "extreme" based on how far out of attainment they are. *Id.* § 7511(a)(1) tbl.1. Under the Act's "graduated classification scheme" for ozone nonattainment areas, the higher the classification, the longer the area has to come into attainment, but the more stringent the controls it must adopt. *South Coast Air Quality Mgmt. Dist. v. EPA*, 472 F.3d 882, 887 (D.C. Cir. 2006), *amended in other parts* 489 F.3d 1245 (D.C. Cir. 2007). If an area fails to timely attain, EPA must reclassify it to a higher classification, triggering requirements for the area to adopt stronger pollution control requirements. *Id.* 887-88.

Specifically, and central to this case, the Act requires that EPA make a determination no later than six months after an area's attainment deadline as to whether the area timely attained; an area that fails to attain is automatically reclassified to the appropriate higher classification:

> Within 6 months following the applicable attainment date (including any extension thereof) for an ozone nonattainment area, the Administrator shall determine, based on the area's design value (as of the attainment date), whether the area attained the standard by that date. Except for any Severe or Extreme area, any area that the Administrator finds has not attained the standard by that date shall be reclassified by operation of law…to the higher of—
>
> (i) the next higher classification for the area, or
>
> (ii) the classification applicable to the area's design value as determined at the time of the notice required under subparagraph (B).

42 U.S.C. § 7511(b)(2)(A). Further, EPA must publish notice in the Federal Register of its determination and any reclassification:

> The Administrator shall publish a notice in the Federal Register, no later than 6 months following the attainment date, identifying each area that the Administrator has determined under subparagraph (A) as having failed to attain and identifying the reclassification, if any, described under subparagraph (A).

*Id.* § 7511(b)(2)(B). EPA has taken the position that the Clean Air Act, read in conjunction with the Administrative Procedure Act, 5 U.S.C. § 553, requires public notice and an opportunity for public comment before EPA can finalize an attainment and reclassification determination. *See*

---

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT
CASE NO. 3:19-cv-2462-RS                                                                                    5

*Sierra Club v. Browner*, 130 F. Supp. 2d. 78, 90-93 (D.D.C. 2001) (upholding EPA's position on the need for public notice and comment); *see also Sierra Club v. Whitman*, 285 F.3d 63, 66 (D.C. Cir. 2002) (accepting EPA's statement that "EPA's established practice for making a final decision concerning nonattainment and reclassification is to conduct a rulemaking under the [Administrative Procedure Act]" and citing examples). Further, EPA takes the position that its obligation to make an attainment determination under § 7511(b)(2)(A) is satisfied once EPA's determination becomes effective. 84 FR 44,238, 44,243/1-2 (Aug. 23, 2019) ("Once effective, this final action satisfies the EPA's obligation pursuant to [§ 7511](b)(2)(A) to determine, based on an area's air quality as of the attainment date, whether the area attained the standard by the applicable attainment date.").

Until EPA makes and publishes its attainment determinations in the Federal Register, and makes them effective, the careful design of the Act's nonattainment provisions is paused, even when an area continues to have air quality in violation of the federal limits after the area's attainment deadline. EPA delay in making and publishing these attainment determinations thus thwarts the precise schedule Congress laid out to ensure protection of public health from smog pollution.

## III.    EPA PROMULGATES THE 2008 OZONE STANDARD AND BEGINS IMPLEMENTING IT.

EPA strengthened the ozone standard in 2008 based on an extensive scientific record demonstrating that the prior ozone standards were inadequate to protect public health and welfare. 73 FR 16,436 (Mar. 27, 2008) (promulgated Mar. 12, 2008). EPA set the level of the standard at 75 parts per billion. *Id.* 16,436/1. Violations of the 2008 ozone standard are found by analyzing air monitoring data about the actual level of ozone in the air to determine whether the three-year average of the annual fourth highest eight-hour ozone concentration in an area exceeds 75 parts per billion. 40 C.F.R. § 50.15(b). The result of this calculation is called a "design value." *See* 83 FR 56,781, 56,783/1 n.4 (Nov. 14, 2018).

The revision to the ozone standard triggered EPA's obligation to "promulgate the designations of all areas" of the country as meeting ("in attainment of") or not meeting ("in

---

nonattainment of") the standard within two years—*i.e.*, by March 12, 2010. 42 U.S.C.
§ 7407(d)(1)(B)(i); *see also* Answer ¶ 27, ECF No. 19 (agreeing). EPA extended the two-year
deadline by an additional year, to March 12, 2011, and then missed it. 77 FR 30,088, 30,091/1
(May 21, 2012); *see also* Answer ¶ 27 (agreeing).[1]

Ultimately, EPA completed all designations effective July 20, 2012. 77 FR 30,088/2;
77 FR 34,221, 34,221/3 (June 11, 2012); *accord* Answer ¶ 28 (agreeing). The Administrator's
designations triggered Clean Air Act attainment deadlines. Moderate nonattainment areas had up
to six years, *i.e.*, until July 20, 2018, to attain the 2008 ozone standard. 77 FR 30,160 (May 21,
2012); *see* 80 FR 12,264, 12,267/3-68/2 (Mar. 6, 2015) (revising attainment deadlines in light of
*Natural Resources Defense Council ("NRDC") v. EPA*, 777 F.3d 456 (D.C. Cir. 2014)); *see also*
Answer ¶ 28 (agreeing). Because design values are calculated using complete calendar years of
data about air quality, for attainment to be timely, it "must occur no later than December 31 of
the year prior to the attainment date (*i.e.*, December 31, 2017, in the case of Moderate
nonattainment areas for the 2008 ozone NAAQS)." 83 FR 56,783/2.

## IV.   EPA FAILS TO TAKE LEGALLY REQUIRED ACTIONS REGARDING WHETHER THE AREAS AT ISSUE MET THE MODERATE AREA ATTAINMENT DEADLINE.

EPA designated both Imperial County and Phoenix-Mesa as nonattainment areas and
initially classified them as "marginal." 77 FR 30,096-97 (Phoenix-Mesa) (codified as amended at
40 C.F.R. § 81.303), 30,099 (Imperial County) (codified as amended at 40 C.F.R. § 81.305).
Their attainment deadline passed on July 20, 2015, and—after the agency's January 20, 2016,
deadline for doing so—EPA subsequently determined these areas had failed to timely attain and
published notice in the Federal Register identifying them as being reclassified as "moderate."
81 FR 26,697, 26,699 tbl.3 (May 4, 2016). The new attainment deadline for these areas was July
20, 2018, and the Act required EPA to determine and publish notice in the Federal Register by

---

[1] In 2015, EPA reviewed and revised the ozone standard. EPA set a new, more stringent ozone standard at 70 parts per billion based on a finding that the 2008 standard is not requisite to protect public health with an adequate level of safety. 80 FR 65,292. This standard is not at issue here.

January 20, 2019, identifying the areas that failed to attain and any reclassifications. *See* Compl. ¶¶ 28-29, 31, ECF No. 1; Answer ¶¶ 28-29, 31 (admitting same).[2]

Despite its statutory duty, EPA took no such action by January 20, 2019, and still has not. *E.g.*, Answer ¶ 44 ("Defendant admits that EPA has not finalized attainment determinations and published notice in the Federal Register for Phoenix-Mesa, AZ, and Imperial County, CA."). Months later, after Environmental Groups filed their Complaint, EPA proposed to determine that Phoenix-Mesa timely attained the 2008 ozone standard. *Id.* (citing 84 FR 27,566 (June 13, 2019)). This proposal does not claim that air quality in the area actually met the 2008 ozone standard; rather, it proposes to discard for regulatory purposes some high ozone levels because they purportedly resulted from "exceptional events." 84 FR 27,569/1-2. Sierra Club filed timely comments opposing the proposal. Comment of Ariz. Ctr. for Law in the Public Interest & Sierra Club, EPA-R09-OAR-2018-0821-0065, Ex.3. EPA has taken no action at all regarding Imperial County. *See* Answer ¶ 44.

## JURISDICTION, NOTICE, VENUE, AND STANDING

This Court has jurisdiction under the Clean Air Act's citizen suit provision, which authorizes district courts to hear actions brought by "any person" to compel EPA to perform "any act or duty" under the Act "which is not discretionary with [EPA]." 42 U.S.C. § 7604(a), (a)(2). EPA's failure to make and publish in the Federal Register final attainment determinations and reclassifications, if any, by January 20, 2019, is a failure to perform an action that is not discretionary, as explained herein.

---

[2] Plaintiffs' Complaint identifies 10 other moderate areas for which EPA failed to make and publish in the Federal Register final attainment determinations: Mariposa County, CA; Nevada County (Western part), CA; San Diego County, CA; Baltimore, MD; Chicago-Naperville, IL-IN-WI; Dallas-Fort Worth, TX; Greater Connecticut, CT; Houston-Galveston-Brazoria, TX; New York-N. New Jersey-Long Island, CT-NJ-NY; and Sheboygan County, WI. EPA has now made and published those determinations, and they are scheduled to go into effect September 23, 2019. 84 FR 44,239/1. Per EPA's own position, the agency will not have discharged its statutory obligations for these areas until the determinations go into effect. *Id.* 44,243/1-2. To avoid burdening the Court and EPA with a request and argument that likely will be superfluous, Plaintiffs discuss these areas here to reserve their rights to seek relief for any additional areas beyond Imperial County and Phoenix-Mesa at a later date if necessary.

---

1    Environmental Groups satisfied the notice requirements for bringing this action. *See*

2    Answer ¶ 7. EPA has continued its failure to fulfill its mandatory duty regarding Imperial County

3    and Phoenix-Mesa. *Id.* ¶ 44.

4    Venue is proper in this Court because Plaintiff Sierra Club is headquartered in Oakland

5    and thus resides in this district, and this district is one in which EPA resides and performs its

6    official duties. 28 U.S.C. § 1391(e)(1)(A), (C). Venue is also proper because a substantial part of

7    the events and omissions giving rise to this claim occurred and is occurring in this district, for

8    EPA's Regional Office in San Francisco has a substantial role in implementing the EPA duties at

9    issue. 28 U.S.C. § 1391(e)(1)(B); *see* 84 FR 27,570/3 (Acting Regional Administrator of EPA

10   Region 9 signed proposed attainment determination for Phoenix-Mesa); EPA, Organization of

11   EPA's Region 9 Office in San Francisco, https://www.epa.gov/aboutepa/organization-epas-

12   region-9-office-san-francisco (EPA Region 9's Air and Radiation Division is located in San

13   Francisco).

14   Environmental Groups have standing to bring this suit because their members would have

15   standing to sue in their own right, Environmental Groups' interest in safeguarding public health

16   and the environment is germane to their organizational purposes, Exs.6-9, and this suit will not

17   require individual participation of members. *Hunt v. Wash. State Apple Advert. Comm'n*,

18   432 U.S. 333, 343 (1977). Environmental Groups have members who live, work, recreate, and

19   carry out other activities in Imperial County and Phoenix-Mesa. *See* Declarations, Exs.6-9. EPA

20   acknowledges that ozone levels in Phoenix-Mesa in fact violated the 2008 ozone standard at the

21   attainment deadline, 84 FR 27,569/1-2, and the most recent subsequent data shows ozone levels

22   continue to violate that standard. EPA, Ozone Design Values, 2018, tbl.1b (Design Values in

23   Areas Previously Designated Nonattainment for the 2008 8-Hour Ozone NAAQS),

24   https://www.epa.gov/sites/production/files/2019-

25   07/ozone_designvalues_20162018_final_06_28_19.xlsx, Ex.4. Similarly, ozone levels in

26   Imperial County violated the 2008 ozone standard at the attainment deadline and under the most

27   recent data. *Id.*; EPA, Ozone Design Values, 2017, tbl.1b (Design Values in Areas Previously

28   Designated Nonattainment for the 2008 8-Hour Ozone NAAQS),

---

1    https://www.epa.gov/sites/production/files/2018-

2    07/ozone_designvalues_20152017_final_07_24_18.xlsx, Ex.5.

3        Ozone and related pollution in these areas endangers Plaintiffs' members' and their

4    members' families' health and diminishes their enjoyment of their outdoor activities by, among

5    other things, causing them to limit the time they spend outdoors. *See* Declarations, Exs.6-9.

6    Attainment determinations for these areas and their publication in the Federal Register are

7    necessary to continue the process of bringing ozone pollution levels down to comply with the

8    standard EPA found necessary to protect public health and welfare. *See supra* pp.4-6.

9    Accordingly, Environmental Groups have standing to bring this suit. *E.g.*, *Friends of the Earth v.*

10   *Laidlaw Envtl. Servs. (TOC)*, 528 U.S. 167, 181-84 (2000) (environmental group has standing

11   where members use area impacted by pollutant discharges and aver reasonable concerns about

12   the effects of those discharges on their recreational, aesthetic, and economic interests); *Hall v.*

13   *Norton*, 266 F.3d 969, 973-74, 976 (9th Cir. 2001) (individual has standing where he faces a

14   threat of harm from air pollution when traveling, shopping, and carrying out other activities in

15   polluted area).

16        EPA's failure to timely make attainment determinations for these areas and publish notice

17   thereof (identifying any reclassifications) in the Federal Register further causes procedural injury

18   to Plaintiffs and their members. The Act's procedure for making those determinations and

19   publishing notice of them in the Federal Register by a fixed deadline is designed to protect

20   Plaintiffs' members' concrete interests in breathing clean air and enjoying their outdoor

21   activities. *See Ctr. for Biological Diversity v. Mattis*, 868 F.3d 803, 816-18, 826-27 (9th Cir.

22   2008) (environmental group had standing where agency violated procedural requirement

23   designed to protect group's concrete interests in welfare of endangered species). As described

24   above, these determinations trigger requirements for adoption of additional measures to curb

25   ozone pollution and a new legally enforceable deadline for attainment of the 2008 ozone

26   standard, but EPA's continuing failure to make and publish attainment determinations delays this

27   process, postponing required steps to reduce unsafe levels of ozone pollution, and thereby

28   prolonging Plaintiffs' members' exposure to harmful ozone pollution. Moreover, EPA's failure

1  to complete and publish the attainment determinations deprives Plaintiffs and their members of

2  their procedural rights to participate in the determinations' development and to judicially

3  challenge determinations that they contend are unlawful or arbitrary, *see Sierra Club v. EPA*,

4  346 F.3d 955 (9th Cir. 2003) (vacating EPA's attainment determination for and refusal to

5  reclassify Imperial Valley under particulate matter standard), as well as their procedural rights to

6  enforce the Act's requirements for preparation and implementation of additional plans legally

7  required to remedy violations of the standards, to participate in rulemakings to develop such

8  plans, and to judicially challenge such plans. An order compelling EPA to make and publish the

9  attainment determinations by a date certain will redress the foregoing injuries.

**ARGUMENT**

10

11 **I.   LEGAL STANDARD.**

12         Under Federal Rule of Civil Procedure 56, summary judgment must be granted when,

13 viewing the facts in the light most favorable to the nonmoving party, the record shows that "there

14 is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

15 law." Fed. R. Civ. P. 56(a). Once the moving party has satisfied its burden, it is entitled to

16 summary judgment if the non-moving party fails to cite "specific facts showing that there is a

17 genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *accord* Fed. R. Civ.

18 P. 56(c)(1)(A).

19         In ordering appropriate relief, a district court should compel EPA to correct its statutory

20 violations as soon as possible. *NRDC v. Train*, 510 F.2d 692, 705, 712-13 (D.C. Cir. 1974).

21 Where there is a clear statutory deadline, EPA bears the especially "heavy" burden of proving

22 that expeditious compliance would be "impossible." *Sierra Club v. Thomas*, 658 F. Supp. 165,

23 170-71 (N.D. Cal. 1987) (citing *Train*).

24 **II.   EPA HAS FAILED TO PERFORM ITS MANDATORY CLEAN AIR ACT DUTY
       TO MAKE AND PUBLISH IN THE FEDERAL REGISTER ATTAINMENT
25       DETERMINATIONS FOR IMPERIAL COUNTY AND PHOENIX-MESA.**

26         It is undisputed that EPA was required under the Clean Air Act to determine by January

27 20, 2019, whether all moderate nonattainment areas under the 2008 ozone standard timely

28

---

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT
CASE NO. 3:19-cv-2462-RS                                                                    11

attained that standard and to publish notice in the Federal Register by January 20, 2019, identifying each area that failed to timely attain that standard and identifying any reclassification. *See* Answer ¶ 29; *see also* 42 U.S.C. § 7511(b)(2)(A)-(B). It is also undisputed that Imperial County and Phoenix-Mesa are moderate nonattainment areas under the 2008 ozone standard. *See, e.g.*, Answer ¶ 44 (referring to "the Phoenix-Mesa, AZ, ozone nonattainment area['s]…Moderate area attainment date"); 40 C.F.R. § 81.305 (identifying "Imperial County, CA," as "Moderate" nonattainment area under "2008 8-Hour Ozone NAAQS"). Finally, "Defendant admits that EPA has not finalized attainment determinations and published notice in the Federal Register for Phoenix-Mesa, AZ, and Imperial County, CA." Answer ¶ 44.

EPA thus concedes that it has failed to complete these required actions by the Clean Air Act's unambiguous deadline. No more is needed to prove EPA's liability.[3]

Moreover, it is plain that the overdue actions are mandatory. Each statutory provision uses the unequivocal term "shall" to direct EPA to make a determination and publish notice of it in the Federal Register. 42 U.S.C. § 7511(b)(2)(A)-(B); *see supra* pp.5-6 (EPA takes position that to make an attainment determination, it must go through notice and comment process, with publication in Federal Register). The term "shall" is inherently mandatory. *See, e.g.*, *Alabama v. Bozeman*, 533 U.S. 146, 153 (2001) ("The word 'shall' is ordinarily the language of command."); *NRDC v. EPA*, 542 F.3d 1235, 1250-51 (9th Cir. 2008) (same); *NRDC v. Reilly*, 983 F.2d 259, 266 (D.C. Cir. 1993) (same). Congress underscored that these rulemakings are non-discretionary by setting date-certain deadlines by which EPA must perform the required regulatory actions. *See, e.g.*, *NRDC*, 542 F.3d at 1250-51. Thus, Congress left EPA no discretion to forgo making the determination and publishing the Federal Register notice required by § 7511(b)(2)(A) and (B) for each of the areas at issue or to prioritize any other actions over the completion of these obligations.

---

[3] Though EPA has taken some intermediate steps toward completing its overdue duty for Phoenix-Mesa by proposing a determination in June 2019, *id.* (citing 84 FR 27,566), EPA's final determination and publication thereof in the Federal Register remain outstanding. And EPA has not yet even proposed action regarding Imperial County.

---

1   Moreover, EPA has conceded through its own public statements that it was required to

2   make determinations by the deadline. *See, e.g.*, 83 FR 56,785/2-3 ("Section 181(b)(2)(A) of the

3   [Clean Air Act, 42 U.S.C. § 7511(b)(2)(A),] requires that within 6 months following the

4   applicable attainment date, the EPA shall determine whether an ozone nonattainment area

5   attained the ozone standard based on the area's design value as of that date."). Judicial decisions

6   and other EPA public statements further establish that, to make these determinations, EPA must

7   act via a notice and comment process that culminates in publication in the Federal Register.

8   *Sierra Club*, 285 F.3d at 66 ("if there has not been a rulemaking there has not been an attainment

9   determination."); Final Br. of Appellee, at Argument §§ I.A.1-2,[4] *Sierra Club*, 285 F.3d 63 (D.C.

10  Cir. No. 01-5123), 2001 WL 36037588 (arguing at length that rulemaking is legally required and

11  that "[u]nder the [Administrative Procedure Act], for the reasons previously explained, that

12  determination [under § 7511(b)(2)(A)] requires a rulemaking"); *see Nw. Envtl. Def. Ctr. v.

13  Brennen*, 958 F.2d 930, 934 (9th Cir. 1992) (a "rule" under the Administrative Procedure Act

14  "must be published in the Federal Register"). Nor, EPA concedes, is EPA's duty regarding an

15  area discharged until it makes its determination effective. 84 FR 44,243/1-2 ("[o]nce effective,"

16  final action "satisfies the EPA's obligation" under § 7511(b)(2)(A)).

17  Because it is undisputable that EPA to date has not made final attainment determinations

18  for Imperial County or Phoenix-Mesa, has not published notice of them in the Federal Register,

19  and has not made such determinations effective, EPA has plainly violated the law, and

20  Environmental Groups are entitled to summary judgment finding EPA liable for violating the

21  law.

---

[4] The Westlaw version of this brief lacks star pages.

1   **III.   THE COURT SHOULD REQUIRE EPA TO COMPLETE ITS OVERDUE**
2   **ACTIONS BY A PROMPT DEADLINE.**

3      **A.     A Court Order Compelling EPA to Act Expeditiously Is Necessary to**
           **Effectuate the Clean Air Act.**
4

5          Because Congress specified precisely what EPA must do and EPA has not done it, this

6   Court must issue an order requiring EPA to complete its duty forthwith. 42 U.S.C. § 7604(a)

7   (expressly empowering district courts "to order the Administrator to perform such [an unlawfully

8   withheld] act or duty"); *see also Tenn. Valley Auth. v. Hill*, 437 U.S. 153, 194 (1978); *United*

9   *States v. McIntosh*, 833 F.3d 1163, 1172 (9th Cir. 2016). "Once Congress, exercising its

10  delegated powers, has decided the order of priorities in a given area, it is for the courts to enforce

11  them when enforcement is sought. Courts of equity cannot, in their discretion, reject the balance

12  that Congress has struck in a statute." *United States v. Oakland Cannabis Buyers' Co-op.*,

13  532 U.S. 483, 497 (2001) (internal citation and quotation and alteration marks omitted); *see also*

14  *Horne v. Flores*, 557 U.S. 433, 450 (2009) ("It goes without saying that federal courts must

15  vigilantly enforce federal law and must not hesitate in awarding necessary relief.").

16         Such an order is necessary to prevent EPA from thwarting the purpose of the Clean Air

17  Act. As discussed above, Congress has expressly commanded that EPA make and publish

18  attainment determinations for Imperial County and Phoenix-Mesa by fixed deadlines, and EPA

19  itself views the obligation as satisfied only when its determination becomes effective. EPA's

20  failure to comply with this clear command frustrates Congress's intent in crafting the Act. To

21  ensure public health would be protected, Congress laid out a precise system for implementation

22  of ozone standards. 42 U.S.C. §§ 7511-7511f (provisions specifically for ozone nonattainment

23  areas). EPA's overdue determinations are necessary to keep that system working so that areas

24  that have unhealthy levels of smog take the remedial steps Congress required. H.R. Rep. No.

25  101-490 pt.1, at 234 (1990), *reprinted in* 2 *A Legislative History of the Clean Air Act*

26  *Amendments of 1990*, at 3258 (1993) ("To make this program [codified in 42 U.S.C. §§ 7511-

27  7511f] work, the State and EPA must act in a timely fashion to do all that is required of each.").

28

---

By refusing to make and publish attainment determinations, EPA unlawfully nullifies Congress's carefully conceived mechanism for improving air quality and public health. *Cf. Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 485 (2001) ("EPA may not construe the statute in a way that completely nullifies textually applicable provisions meant to limit its discretion."). The Act explicitly gives district courts authority "to order the Administrator to perform such [an unlawfully withheld] act or duty." 42 U.S.C. § 7604(a). A court order is thus authorized and needed to prevent Congress's intent from being undone.

## B.      Certain Fixed Deadlines Are Appropriate.

When Congress "categorically mandate[s]" that EPA meet explicit deadlines, EPA is "deprive[d] of all discretion over the timing of its work." *Sierra Club v. Thomas*, 828 F.2d 783, 791 (D.C. Cir. 1987). Violations of such statutory deadlines should be corrected "as soon as possible," using all available means. *Delaney v. EPA*, 898 F.2d 687, 691 (9th Cir. 1990); *see Train*, 510 F.2d at 705 (explaining "[t]he authority to set enforceable deadlines of both an ultimate and intermediate nature is an appropriate procedure…to vindicate the public interest").

In fashioning an appropriate deadline, courts generally consider the original statutory time period for compliance, the public interest, and the time needed by the agency to properly do the job. *See Sierra Club*, 658 F. Supp. at 171-72. Where Congress directed an agency to perform a regulatory duty within a given time, the agency bears "a heavy burden to show" that its proposed remedy is as expeditious as possible, and that faster compliance is "impossible." *In re Ozone Designation Litigation*, 286 F. Supp. 3d 1082, 1086 (N.D. Cal. 2018); *American Lung Ass'n v. Browner*, 884 F. Supp. 345, 347 (D. Ariz. 1994); *see also, e.g.*, *Train*, 510 F.2d at 712-13 ("injunction should serve like adrenalin, to heighten the response and to stimulate the fullest use of resources," and agency has burden to demonstrate it is impossible to comply by deadline); *Communities for a Better Env't v. EPA*, No. C 07-03678 JSW, 2008 WL 1994898, at *2 (N.D. Cal. May 5, 2008) (rejecting EPA's argument that "it is only obligated to demonstrate a reasonable schedule" and finding that "EPA bears the heavy burden of proving impossibility" (internal quotations and citations omitted)).

1

### 1.     Imperial County.

2      Environmental Groups respectfully request this Court order EPA to issue a proposed

3 attainment determination by January 21, 2020, make a final determination and publish it (and

4 identify any reclassification) in the Federal Register by March 19, 2020, and make it effective by

5 April 20, 2020. This time is sufficient to perform the necessary reviews, for it is consistent both

6 with the governing statutes and with EPA's own precedent. Communities in Imperial County

7 need EPA to fulfill its overdue duties swiftly so they can assure they receive vital public health

8 protections.

9      Under EPA's own statutory interpretation, which the U.S Court of Appeals for the

10 District of Columbia Circuit and U.S. District Court for the District of Columbia have accepted,

11 the Act requires EPA to make and publish its attainment determination, identifying any

12 reclassification, within six months of the attainment deadline. Plaintiffs' proposed schedule

13 would provide EPA precisely that same interval, but keyed off the date of filing this Motion for

14 Summary Judgment. Notably, the actual attainment deadline was July 20, 2018, and EPA has

15 had the air quality data needed to make the attainment determination since at latest July 24, 2018.

16 *See supra* p.7 (explaining that 2017 design values determine whether area with attainment

17 deadline in July 2018 timely attained); EPA, Ozone Design Values, 2017, tbl.1b (Design Values

18 in Areas Previously Designated Nonattainment for the 2008 8-Hour Ozone NAAQS) (giving

19 date of last update as July 24, 2018), Ex.5. Thus, if anything, Plaintiffs' proposed schedule is

20 extremely generous, as it accords EPA just a day less than 21 months to make the determination

21 the Act mandates be made in 6.

22      EPA has shown it can make attainment determinations in similarly expeditious fashion,

23 too. For example, EPA reclassified the Houston-Galveston-Brazoria, TX, nonattainment area

24 from marginal to moderate under the 2008 ozone standard within five months of its July 20,

25 2016, extended attainment deadline, with less than three months elapsing between proposal and

26 finalization. 81 FR 90,207 (Dec. 14, 2016) (final); 81 FR 66,240 (Sept. 27, 2016) (proposal). For

27 the San Luis Obispo (Eastern San Luis Obispo), CA, nonattainment area, EPA made and

28 published a determination of timely attainment almost exactly five months after the same July

20, 2016, extended attainment deadline, taking about two and a half months to move from proposed to final version. 81 FR 93,620 (Dec. 21, 2016) (final); 81 FR 70,382 (Oct. 12, 2016) (proposal).

Plaintiffs' proposal to prescribe an effective date further accords with EPA's own published position that it discharges its duty under § 7511(b)(2)(A) only when its attainment determination becomes "effective." 84 FR 44,243/1-2. Under the Administrative Procedure Act, a 30-day period before a rule becomes effective is the shortest ordinary period. *See* 5 U.S.C. § 553(d). Further, that period aligns with EPA's ordinary practice. *E.g.*, 84 FR 44,239/1; 81 FR 93,620/2. Thus, each aspect of Plaintiffs' requested relief, as well as the overall relief, regarding Imperial County is expeditious.

### 2.      Phoenix-Mesa.

EPA has already issued a proposal regarding its attainment determination for Phoenix-Mesa, and the comment deadline on it closed in July. 84 FR 27,566. In the Initial Case Management Conference, counsel for EPA indicated orally that the agency expects to have completed and published its determination before this case will be decided. Environmental Groups appreciate EPA's commitment to finishing its overdue work on the area. In the event that EPA has not completed action by the time this case is heard on December 19, 2019, Environmental Groups respectfully request this Court order EPA to make a final determination by January 21, 2020, publish it (and identify any reclassification) in the Federal Register by January 21, 2020, and make it effective by February 20, 2020. These deadlines are exceedingly generous given the progress EPA has already made on completing its work. They would provide EPA over seven months just between its June 13, 2019, proposal, and the requested deadline for finalization of January 21, 2020. For the reasons explained above in addressing Imperial County, the requested deadlines are consistent with statutes, case law, and EPA's own positions.

### CONCLUSION

For the foregoing reasons, Environmental Groups respectfully request that this Court enter summary judgment in their favor on the question of liability, declare EPA to be in violation of its mandatory duties to make and publish in the Federal Register attainment determinations

regarding the Imperial County and Phoenix-Mesa areas, and order EPA to perform each required action and duty by an expeditious deadline. Specifically, Plaintiffs ask the Court to order EPA to do the following:

(1) Propose an attainment determination for Imperial County no later than January 21, 2020;

(2) Make and publish in the Federal Register a final attainment determination (identifying any reclassification) for Imperial County no later than March 19, 2020, with an effective date of no later than April 20, 2020; and

(3) Make and publish in the Federal Register a final attainment determination (identifying any reclassification) for Phoenix-Mesa no later than January 21, 2020, with an effective date of no later than February 20, 2020.


Dated: September 19, 2019

Respectfully submitted,



/s/ *Seth L. Johnson*
SETH L. JOHNSON, *Pro Hac Vice*
ISABEL SEGARRA TREVINO, *Pro Hac Vice*
Earthjustice
1625 Massachusetts Ave., NW, Ste. 702
Washington, DC 20036
sjohnson@earthjustice.org
isegarra@earthjustice.org
Tel: 202-667-4500/Fax: 202-667-2356

PAUL R. CORT, State Bar No. 184336
Earthjustice
50 California Street
San Francisco, CA 94111
pcort@earthjustice.org
Tel: 415-217-2000/Fax: 415-217-2040

*Counsel for Plaintiffs Center for Biological Diversity and Sierra Club*