UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, et al., <br><br> Plaintiffs, <br><br> v. <br><br> ANDREW R. WHEELER, <br><br> Defendant. | Case No. 19-cv-02462-RS <br><br> **ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

## I. INTRODUCTION

The Clean Air Act ("CAA"), 42 U.S.C. § 7401 *et seq*, assigns to the Environmental Protection Agency ("EPA") a mandatory duty to report regularly on geographies that do not meet national ambient air quality standards ("standards"). This reporting process exists in part to alleviate elevated levels of ozone pollution—that is, smog—that are known to harm people's health and the environment. Plaintiffs Center for Biological Diversity and Sierra Club allege that defendant Andrew Wheeler, in his official capacity as Administrator of the EPA, failed (a) to determine whether twelve areas which were in 2012 designated as moderately exceeding ozone standards had come into compliance by a statutory deadline and (b) to publish notice of said determinations in the Federal Register. The parties agree that the EPA has fulfilled some, but not all, of its statutory duties since the complaint was filed. Both parties now move for summary judgment on the remaining issues. Pursuant to Civil Local Rule 7-1(b), the motions are suitable for

disposition without oral argument, and the hearing set for December 19, 2019 is vacated. For the reasons set forth below, both motions are granted in part and denied in part.

## II.  BACKGROUND

The CAA requires the EPA[1] to set standards for pervasive pollutants, such as ozone, in order to protect public health and welfare. 42 U.S.C. §§ 7408(a), 7409(a)–(b). The agency must review and, as needed, revise those standards every five years. *Id.* § 7409(d)(1). After a revised set of standards is set, the EPA must "promulgate the designation[]" of each area of the country as violating them ("nonattainment"), meeting them ("attainment"), or unclassifiable. *Id.* § 7407(d)(1)(A). Nonattainment areas must be specifically classified as "marginal," "moderate," "serious," "severe," or "extreme," depending on how far from attainment they are. *Id.* § 7511(a)(1). Depending on their classification, nonattainment areas are given a deadline by which they must come into compliance with the standards. *Id.* §§ 7410(a), (c). No more than six months after the given deadline, the EPA is required to determine whether the area has come into attainment and publish notice of its determination in the Federal Register. *Id.* § 7511(b)(2). Before any determination can be finalized, public notice and an opportunity for comment are required. *Sierra Club v. Whitman*, 285 F.3d 64, 66 (D.C. Cir. 2002). The EPA's obligation is not satisfied until its determination becomes effective, *see, e.g.*, 84 Fed. Reg. 44,238 (Aug. 23, 2019), which can happen no fewer than thirty days after it is published, 5 U.S.C. § 553(d).

In 2008, the EPA found that existing ozone standards were inadequate to protect public health and welfare and accordingly set more stringent ones.[2] This revision triggered the EPA's obligation to "promulgate the designation[]" of each area of the country as in attainment or not within two years. 42 U.S.C. § 7407(d)(1)(B)(i). After extending and even then missing this two-year deadline, the EPA finally completed all designations effective July 20, 2012. All "moderate"

---

[1] This Order ascribes obligations and actions of the "Administrator of the EPA" to "the EPA" for simplicity.

[2] The EPA again reviewed and revised the ozone standard in 2015, but the 2015 standard is not at issue in this action.

nonattainment areas were given an attainment deadline of July 20, 2018. The EPA was to determine whether each area had met that deadline, and publish notice in the Federal Register, by January 20, 2019.

On May 7, 2019, plaintiffs filed a complaint seeking declaratory and injunctive relief ordering the EPA to make final attainment determinations for twelve moderate nonattainment areas. The EPA subsequently made final determinations for ten of those areas before answering the complaint but admitted that determinations for Imperial County, California and Phoenix-Mesa, Arizona were outstanding. On September 19, 2019, plaintiffs filed their present motion for summary judgment. Eleven days later, the EPA signed a proposed rule determining that Imperial County would have attained the 2008 standards but for emissions emanating from outside the United States. No final determination has been published. However, on October 21, 2019, the EPA did sign a final determination for Phoenix-Mesa; the determination had been proposed in June, and plaintiff Sierra Club had submitted comments opposing it. The determination was nevertheless published in its final form in the Federal Register on November 12, 2019 and is set to go into effect on December 12, 2019.

### III.  LEGAL STANDARD

Summary judgment is proper "if the pleadings and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The purpose of summary judgment "is to isolate and dispose of factually unsupported claims or defenses." *Celotex v. Catrett*, 477 U.S. 317, 323–24 (1986). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Id*. at 323 (citations and internal quotation marks omitted). If it meets this burden, the non-moving party then "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Those facts must be material, i.e., "facts that might affect the outcome of the suit under the governing law…. Factual disputes that

are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). The court must draw all reasonable inferences in favor of the non-moving party, including questions of credibility and of the weight to be accorded to particular evidence. *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496 (1991) (citing *Anderson*, 477 U.S. at 255).

## IV. DISCUSSION

Parties agree that, in light of the 2008 standards, the EPA had a mandatory duty to report on nonattainment areas by their corresponding attainment deadlines. They further agree that the deadline for moderate nonattainment areas was July 20, 2018, with publication in the Federal Register by January 20, 2019, and that the EPA has shirked its duties under the CAA with respect to Imperial County. Their dispute is limited to two narrow issues. First, in light of the final determination for Phoenix-Mesa, has the EPA fulfilled its duties and thus is plaintiffs' claim with regard to that area moot? Second, what deadlines should be set regarding Imperial County? Answering these questions will not involve a dispute about any material fact, and thus judgment as a matter of law is appropriate. Plaintiffs' claim with respect to Phoenix-Mesa is moot, but their request that deadlines be set to ensure reasonably the final Imperial County determination is in effect by April 20, 2020 is persuasive. Thus, both motions for summary judgment are granted in part and denied in part.

### A. Phoenix-Mesa

Plaintiffs acknowledge that a final attainment determination for Phoenix-Mesa was published on November 12, 2019 and will soon go into effect. They nevertheless argue that their claim as to the area should be held in abeyance because there exists "a well-founded possibility" that the determination will be subject to judicial review. Plaintiffs' Reply, ECF No. 29, at 4. Should the determination be successfully challenged and vacated, say plaintiffs, the EPA would again be in violation of its mandatory duties under the CAA.

Plaintiffs' argument is unavailing. The injury their complaint alleged—the EPA's noncompliance with its obligations under the CAA—has been remedied with respect to Phoenix-Mesa by the issuance of a final attainment determination. "[T]he issues presented are no longer

ORDER
CASE NO. 19-cv-02462-RS
4

live." *Los Angeles County v. Davis*, 440 U.S. 625, 631 (1979) (internal quotations and citation omitted). Their injury is not "capable of repetition, yet evading review." *Kingdomware Technologies, Inc. v. United States*, 136 S. Ct. 1969, 1976 (2016). Rather, should the determination ever be vacated, the party who successfully challenges the determination—or plaintiffs themselves—would have recourse to raise the issue. *Cf. Sierra Club v. EPA*, 850 F. Supp. 2d 300 (D.D.C. 2012). In the absence of a live "case or controversy," however, the courts lack jurisdiction to hold plaintiffs' claim in abeyance. U.S. Const. art. 3 § 2. Plaintiffs' claim with respect to Phoenix-Mesa must therefore be denied as moot.

**B. Imperial County**

A proposed attainment determination for Imperial County was issued on September 30, 2019, and parties agree that the EPA will not have completed its duties under the CAA until the determination is finalized, published in the Federal Register, and goes into effect. Plaintiffs propose March 19, 2020—six months from the date of their summary judgment motion—as an appropriate deadline for signing the determination. The EPA agrees. Plaintiffs further request that the final determination be published in the Federal Register by that date, such that it will go into effect by April 20, 2020. The EPA argues that March 19, 2020 is the soonest possible date it can sign a final determination, after which it will need approximately fifteen business days before transmission for publication. Furthermore, says the agency, once it transmits the determination, it has no control over when the determination is actually published in the Federal Register. The lapse between transmission and publication is usually about two weeks. The determination cannot become effective until at least thirty days after it is published. 5 U.S.C. §§ 553(d).

The time estimates provided by the EPA make it simple to calculate: if one wished to ensure reasonably that a final attainment determination for Imperial County was effective by plaintiffs' proposed deadline of April 20, 2020, then said determination would need to be published in the Federal Register by March 19, 2020; transmitted for publication by approximately March 5, 2020; and signed by approximately February 13, 2020. On the other hand, if the EPA's proposed signing deadline of March 19, 2020 is used, then the determination will be transmitted

by approximately April 9, 2020; published by approximately April 23, 2020; and become effective around May 26, 2020. This is thus effectively a dispute about whether the EPA should have an additional five weeks to come into compliance with its mandatory CAA duties.

"The burden on an agency of establishing impossibility or infeasibility of issuing regulations within the statutory time frame is heavy." *Sierra Club v. Thomas*, 658 F. Supp. 165, 171 (N.D. Cal. 1987). "It is especially heavy where, as here, the agency has failed to demonstrate any diligence whatever in discharging its statutory duty to promulgate regulations and has in fact ignored that duty for several years." *Id.* Nevertheless, "recalcitrance does not render feasible what is otherwise infeasible." *California v. EPA*, 385 F. Supp. 3d 903, 912 (N.D. Cal. 2019). Factors that are appropriate to consider include the original statutory deadline, the public interest, and the time needed by the agency to complete the task at hand. *Sierra Club*, 658 F. Supp. at 171–72.

The EPA has not shown it would be "impossible" to finalize a determination by February 19, 2020, which is already a full year after the statutory deadline. The declaration submitted by the EPA explains in excruciating detail the intra-agency process that is undertaken to finalize a determination, but it provides no estimate of the time that process would take either generally or in this case. The proposed determination for Phoenix-Mesa was issued in June 2019 and the final determination signed in October—that is, a four-month process. The EPA has provided no explanation for why a *five*-month process—a proposed determination for Imperial County was issued in September—is impossible or infeasible. While the EPA cannot itself control the Federal Register publication schedule, the agency has sufficient institutional experience to deduce when it would need to transmit a determination for publication in order to meet, with reasonable certainty, plaintiffs' proposed schedule. It has already discharged its statutory duty for almost a full year; to permit it to do so any longer would upset the priorities Congress so carefully balanced. Thus, in order reasonably to ensure that a final determination is made effective and the EPA's duty is discharged by April 20, 2020, the agency shall finalize and sign said determination by February 13, 2020.

## V.  CONCLUSION

For the reasons set forth above, both motions for summary judgment are granted in part and denied in part. The EPA is in violation of its duty under the CAA to make and publish in the Federal Register a final attainment determination for Imperial County with respect to the 2008 standards. It is ordered to finalize a determination by February 13, 2020 and transmit it for publication within, at most, fifteen business days. The determination shall go into effect thirty days after its publication in the Federal Register. Plaintiffs' claim regarding Phoenix-Mesa is moot, and accordingly it will not be held in abeyance.[3]

**IT IS SO ORDERED**.

Dated: December 11, 2019

_____
RICHARD SEEBORG
United States District Judge

---

[3] The EPA also requests that (1) in the event of any lapse in appropriations to the agency before its deadline, it be granted an automatic day-for-day extension; (2) the deadline be extendable by stipulation of the parties or for good cause shown; and (3) this order be terminated upon notice by the agency that it has complied with all obligations imposed by the order. Plaintiffs do not oppose these requests. They are therefore granted.